UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| KEITH RAYMOND, ET AL. | ) |
| | ) JUDGE BARRETT |
| Plaintiffs, | ) |
| | ) CASE NO. 1:15-CV-00559-MRB |
| v. | ) |
| | ) |
| AVECTUS HEALTHCARE | ) MOTION TO DISMISS BY |
| SOLUTIONS, LLC A.K.A. MEDPAY | ) DEFENDANT AVECTUS |
| ASSURANCE LLC, ET AL. | ) HEALTHCARE SOLUTIONS, LLC |
| | ) |
| Defendants. | ) |

Defendant Avectus Healthcare Solutions, LLC moves this Court to dismiss this action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth in the attached memorandum, each of the eight counts asserted in the Complaint fails as a matter of law and should be dismissed.

Respectfully submitted,

*/s/ Chad R. Ziepfel*
Chad R. Ziepfel (0084274)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Ph: (513) 357-9368
Fx: (513) 381-0205
cziepfel@taftlaw.com
*Attorney for Defendant*
*Avectus Healthcare Solutions, LLC*

14640887.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| KEITH RAYMOND, ET AL. | ) | |
|---|---|---|
| | ) | JUDGE BARRETT |
| Plaintiffs, | ) | |
| | ) | CASE NO. 1:15-CV-00559-MRB |
| v. | ) | |
| | ) | |
| AVECTUS HEALTHCARE | ) | MEMORANDUM IN SUPPORT OF |
| SOLUTIONS, LLC A.K.A. MEDPAY | ) | MOTION TO DISMISS BY |
| ASSURANCE LLC, ET AL. | ) | DEFENDANT AVECTUS |
| | ) | HEALTHCARE SOLUTIONS, LLC |
| Defendants. | ) | |

## I. INTRODUCTION

Plaintiffs Keith Raymond and Timothy Strunk (together, "Plaintiffs") filed a Class Action Complaint [Doc. #1] against Defendants Avectus Healthcare Solutions, LLC ("Avectus") and Mercy Health ("Mercy") challenging the methods used to coordinate insurance benefits when an insurance company or another third party is responsible for payment for medical services. Though the Complaint contains eight different counts, each of Plaintiffs' claims is based on the faulty premise that the methods used by Avectus and Mercy violate Ohio Rev. Code § 1751.60.

Avectus' efforts at issue in this case are nothing more than an attempt to facilitate payment for medical services (rendered to Plaintiffs) from a responsible third-party. Ohio law is clear that such collection practices do not violate Ohio Rev. Code § 1751.60.

1

Accordingly, Plaintiffs' Complaint fails to state a claim upon which relief may be granted, and should be dismissed as a matter of law.

Mercy's previously filed motion to dismiss provides sound reasoning for the dismissal of Plaintiffs' claims against Avectus as well, and so Avectus incorporates Mercy's motion and memorandum in support [Doc. #5] by reference. Additional reasons for dismissing Plaintiffs' Complaint are set forth below.

## II. FACTUAL BACKGROUND

Avectus accepts the allegations in Plaintiffs' Complaint as true solely for purposes of this Motion. *See Girl Scouts of Middle Tenn., Inc. v. Girl Scouts of the U.S.A.*, 770 F.3d 414, 418 (6th Cir. 2014).

On or about June 12, 2013, Plaintiff Strunk was injured in an automobile accident and received medical care at Mercy Health Clermont Hospital. (Compl. ¶¶17, 18.) On or about February 19, 2015, Plaintiff Raymond was injured in a slip-and-fall accident and received medical treatment at Mercy Health Anderson Hospital. (Compl. ¶¶10, 11.) During their admission at the Mercy hospitals, Plaintiffs Strunk and Raymond informed Mercy that they carried health insurance coverage through health insurance corporations CareSource and Medical Mutual of Ohio, respectively. (Compl. ¶¶12, 20.)

Avectus administers Mercy's third-party recovery services and coordination of benefits. (Compl. ¶6.) Following their injuries, Plaintiffs sought to recover damages for their personal injuries from potentially liable third-parties. To protect Mercy's ability to collect Plaintiffs' medical costs from third-party settlements or judgments, Avectus sent Plaintiffs a letter requesting information about potentially responsible third parties. (A

2

copy of the letters to Plaintiff Strunk and Plaintiff Raymond are attached as Exhibits A and B.)[1] The letters seek information to determine whether someone else may be responsible for the medical bill:

> Was this medical treatment required because the patient was injured in an accident? Was that accident caused by someone else or did it happen at work? ***If so, someone else may be responsible for the medical bill***.
>
> [Id. (emphasis added).]

The letters are sent "[a]s a service to [Mercy's] patients" provided "to assist in the coordination of insurance benefits when [the patient's] insurance company or another party is responsible for [the] bill." (Id.) The letters specifically state that "this is NOT a collection notice." (Id.) (emphasis in original).

Avectus later sent Plaintiffs' counsel written notice of Mercy's claim to any third-party proceeds and requested Plaintiffs' counsel sign a letter of protection against any settlement or judgment that may be collected from a responsible third-party. (Compl. ¶¶16, 24.) The letters advised that Avectus "assist[s] in the coordination of benefits for Mercy" and indicated that the patient's account "appears to be related to a claim [the

---

[1] Surprisingly, Plaintiffs fail to attach the Avectus letters to them and their counsel to the Complaint, despite the fact that the letters are the operative documents for purposes of their claims. Such failure can only be explained by their own recognition that the letters support Avectus's position, and not their own. This Court may therefore consider the letters without converting Avectus's motion into one for summary judgment (though if it believes it needs to, it certainly may do so). *See* Fed. R. Civ. P. 10(c); *Bowens v. Aftermath Entm't*, 254 F. Supp. 2d 629, 639 (E.D. Mich. 2003) ("[if] the plaintiff fails to attach the written instrument upon which he relies, the defendant may introduce the pertinent exhibit. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document.") (internal citation and quotation marks omitted); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (explaining that "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

3

attorney is] handling for the above-referenced patient." **(**Copies of the letters to Plaintiffs' counsel are attached as Exhibits C and D (emphasis added).) The letters pointed out that "Medicare, Medicaid, and most private insurance plans may be secondary to any policy or third party primarily responsible for payment." (Id.) Significantly, these letters did not seek payment directly from Plaintiffs. Instead, they sought Plaintiffs' counsel's agreement to pay Mercy "the balance of any unpaid charges owed by the above individual on this claim *should [his] firm obtain any settlement or judgment for this patient.*" (Id. (emphasis added).)

### III. LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations omitted). Unless a plaintiff's allegations have "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Id.* at 570; *Iqbal*, 556 U.S. at 680.

4

## IV. ARGUMENT

Plaintiffs' Complaint is entirely based on the misguided premise that Avectus and Mercy have violated Ohio Rev. Code § 1751.60(A), which provides in pertinent part:

> every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles.

Plaintiffs contend that § 1751.60 establishes two rules. First, Plaintiffs argue in Count One of the Complaint that § 1751.60 <u>requires</u> a health care provider to seek payment from a patient's health insurer. (Compl. ¶¶40, 41, and Introduction ("seeking redress for damages resulting from defendants' . . . refusal to submit claims for health care services . . . to health insuring corporations as required by Ohio R.C. 1751.60.")) Plaintiffs are incorrect; § 1751.60 does not require a health care provider to seek payment from a patient's health insurer. Count One of the Complaint is based on this erroneous premise, and thus should be dismissed as a matter of law.

Second, Plaintiffs argue that § 1751.60 prohibits a health care provider from attempting to collect payment for health care services directly from the patients. (Compl. ¶¶27, 46, 53.c., 62, 72, and Introduction ("seeking redress for damages resulting from defendants' . . . [seeking] payment directly from the patients.")) Counts Two through Eight of the Complaint are based on this proposition. But § 1751.60 prohibits collection directly from a patient only when the health care provider has contracted

5

with the patient's health insurer. Quite significant, Plaintiffs have failed to allege that Mercy has contracted with their health care insurer. Furthermore, § 1751.60 does not prohibit a health care provider—or in this case Avectus—from seeking payment from a responsible third-party, which is precisely what Mercy and Avectus have done in this case. Accordingly, Counts Two through Eight fail as a matter of law and should be dismissed.

### A.  Ohio Rev. Code § 1751.60 does not require health care providers to seek payment from a patient's health insurer.

In Count One, Plaintiffs contend that Ohio Rev. Code § 1751.60 <u>required</u> Mercy and Avectus to submit claims for health care services to Plaintiffs' health insurer. (Compl. ¶¶40, 41.) Plaintiffs, however, fail to support this allegation with any specificity, and for good reason: there is no support within § 1751.60 for Plaintiffs' purported legal proposition. In fact, Plaintiffs' argument was squarely rejected by the Supreme Court of Ohio in *King v. ProMedica Health Sys.*, 129 Ohio St. 3d 596, 955 N.E.2d 348, 2011-Ohio-4200. In that case, Ms. King was injured in an automobile accident and received treatment at the Toledo Hospital. *Id.* at 596. Ms. King informed the hospital that she was covered by health insurance with Aetna Health, Inc. *Id.* Rather than requesting payment from Aetna, the Hospital sought payment from Ms. King's automobile insurer, Safeco Insurance Company of Illinois. *Id.*

Like Plaintiffs in this case, Ms. King brought various state-law and common-law claims against the Hospital, but each claim was predicated on the allegation that the Hospital violated § 1751.60 by billing the automobile insurer (Safeco), instead of the

health insurer (Aetna). *Id.* at 597. The Ohio Supreme Court rejected Ms. King's claims, holding that § 1751.60 does not mandate that a health care provider collect payment from the health insurer, but rather prohibits the health care provider from seeking payment directly from the patient when the health care provider has entered into a contract with the health insurer. *Id.* at 598, 599. The Court ruled that, despite failing to seek payment from Ms. King's health insurer, the Hospital did not violate § 1751.60.

Because § 1751.60 does not require a health care provider to seek payment from the health insurer, Count One fails as a matter of law and must be dismissed.

> **B. Plaintiffs' Complaint fails to allege a contract sufficient to trigger the direct billing prohibition in § 1751.60**

In the remainder of their Complaint, Counts Two through Eight, Plaintiffs purport to advance a variety of legal theories, but they are all grounded upon the singular allegation that Mercy and Avectus violated § 1751.60 by attempting to collect payment for health care services directly from the patients (Plaintiffs). As an initial matter, §1751.60 does not prohibit health care providers from <u>ever</u> seeking payment directly from patients. Instead, it only prohibits collection directly from patients when the health care provider has entered into a contract with a health insurer to provide care to the health insurer's subscribers. *See Hayberg v. Robinson Mem. Hosp. Found.*, 995 N.E.2d 888, 893, 2013-Ohio-2828 (Ohio App. 2013) ("R.C. 1751.60(A) only applies when there is a contractual relationship between the hospital and the insurer.").

Here, Plaintiffs fail to allege that Mercy and Avectus had a contract with Plaintiffs' health insurers to provide care for the health insurers' subscribers, so as to

7

trigger the prohibition in § 1751.60 against collecting payment directly from patients. Plaintiffs' 19-page Complaint contains only a single mention of an unspecified contract between Mercy and Plaintiffs' health insurers. In Count Two, which asserts a claim for breach of third party beneficiary contract, Plaintiffs state: "Upon information and belief, defendant, Mercy, and plaintiffs' HIC entered into an agreement ("favored nations contract") on behalf of its insureds, including, plaintiffs Raymond and Strunk, and said insureds, are thus third party beneficiaries of said agreement." (Compl. ¶45.) This vague allegation says nothing about the type of agreement entered into by Mercy and Plaintiffs' health insurers. Quite simply, there is no allegation that Mercy had a contract with Plaintiffs' health insurer to provide services to the insurer's subscribers. Because the Complaint does not allege that Mercy or Avectus entered into a contract with Plaintiffs' health insurer to provide care to Plaintiffs, under *Twombly*, the Complaint fails to state a claim for violation of § 1751.60. Consequently, Counts Two through Eight must be dismissed.

### C. Avectus did not violate § 1751.60 because it did not attempt to collect payment directly from Plaintiffs.

Even if the Court were to assume the contracts necessary to invoke § 1751.60's prohibition against directly billing patients exist, Plaintiffs' Complaint still fails to state a viable claim because the alleged conduct by Avectus does not constitute direct billing of patients. This issue was addressed in the well-reasoned motion to dismiss previously filed by Mercy [Doc. #5], and so Avectus adopts and incorporates the law and arguments made by Mercy. In sum, Mercy and Avectus are seeking to collect payment

8

from responsible third parties, not directly from Plaintiffs, and thus there is no violation of § 1751.60.

In *King v. ProMedica Health Sys.*, the Supreme Court of Ohio not only held that § 1751.60 does not require a health care provider to seek payment from the health insurer (*see supra* at IV.A.), but further held that § 1751.60 only prohibits a health care provider from seeking to collect payment directly from the patient. 129 Ohio St.3d 596, 598-99 (2011); see also *Hayberg*, 995 N.E.2d at 892 ("the King court held that R.C. 1751.60(A) had not been violated because the hospital never sought payment directly from the plaintiff."). Thus, health care providers are permitted to seek compensation from responsible third parties without violating § 1751.60, even where the recovery might indirectly impact the patient.

In their Response to Mercy's Motion to Dismiss [Doc. #7] ("Response to Mercy Motion"), Plaintiffs acknowledge the limited application of § 1751.60. *See* Response to Mercy Motion at 3 ("R.C. 1751.60(A) applies only when a health care provider seeks payment from an insured.") and 4 ("The [*King*] Court instead carved out a narrow exception whereby a medical provider could seek recovery of its bill from third parties without violating the statute."). Despite agreeing on this general principle, Plaintiffs contend that the collection methods employed by Mercy and Avectus amount to collecting directly from the patient. Plaintiffs are incorrect. Mercy and Avectus sought to recover payment from the third-party to be held responsible for medical costs incurred by Plaintiffs (or the insurance company of such third-party). This is virtually identical to the collection efforts held to be acceptable in *King* and *Hayberg*.

9

In *King*, Ms. King was injured in an automobile accident and received treatment at the Toledo Hospital. *Id.* at 596. Ms. King informed the Hospital that she was covered by health insurance with Aetna Health, Inc. *Id.* Rather than requesting payment from Aetna, the hospital sought payment from Ms. King's automobile insurer, Safeco Insurance Company of Illinois. *Id.* Ms. King argued that collecting payment from her automobile insurer was tantamount to collecting from her, which was prohibited by § 1751.60. Specifically, Ms. King argued her automobile insurance medical benefits were "an asset that belongs to her and that by seeking medical-benefit payments available under the automobile policy, [the hospital] essentially sought compensation from her." *Id.* at 598. The Supreme Court of Ohio rejected this argument, explaining that "[c]ompensation by [the auto insurer] did not equate to compensation by King." *Id.* Quite simply, the Court held that "[b]ecause [Ms. King] was not asked to make any payment for the services received, [the hospital] did not violate R.C. 1751.60(A)." *Id.*

Plaintiffs' argument in this case is nearly identical to the argument made by Ms. King and rejected by the Supreme Court of Ohio. Plaintiffs contend that attempts by Mercy and Avectus to collect payment from responsible third-parties through settlement/judgment funds is equivalent to collecting directly from Plaintiffs. The letters here sought payment only in the event of "any settlement or judgment for this patient." (Exhibits C and D.) Just like in *King*, where compensation from the auto insurer did not equate to compensation directly from Ms. King, compensation from responsible third-parties does not equate to compensation directly from Plaintiffs.

10

Plaintiffs have not been asked to make any payment for the services rendered, and thus, Avectus has not violated § 1751.60.

The principles established in *King* were applied in *Hayberg v. Robinson Mem. Hosp. Found.*, 995 N.E.2d 888, 2013-Ohio-2828 (Ohio App. 2013) to further illustrate that Ohio law permits a hospital to collect payment from a party other than the patient. Mrs. Hayberg received treatment at Robinson Memorial Hospital (the "Hospital") as a result of an accident that was the fault of a third party. *Id.* at 889. She had health insurance through General Motors (the "GM Plan"), and the third party had automobile insurance through Nationwide. *Id.* The Hospital's total bill was $13,861.45, but the GM Plan paid a negotiated rate of $11,295.39. *Id.* Later, Mrs. Hayberg filed a negligence action against the third party responsible for the accident, which was settled by Nationwide for the full policy limits ($100,000). *Id.* at 890. As part of the settlement, Nationwide paid the Hospital its full bill amount of $13,861.45 (the $11,295.39 previously paid by the GM Plan was refunded), meaning the third-party automobile insurer (Nationwide) paid $2,566.06 more for the Hospital services than the GM Plan had previously paid. *Id.*

Mrs. Hayberg brought suit against the Hospital, alleging that it had violated § 1751.60 because "by seeking $2,566.06 more from Nationwide, and thereby reducing the total sum she could receive in her settlement, [the Hospital] essentially was taking payments for its services directly from her." *Id.* at 891-92. She argued that § 1751.60 does not permit a hospital to seek payment from third parties in excess of the amount the health insurer would be required to pay under its contract with the hospital. *Id.* at

11

893. Relying on *King*, the court rejected this argument and found that the Hospital's collection efforts were appropriate under Ohio law. *Id.* The court held that, pursuant to the holding in *King*, "§ 1751.60 only applies when there is a contractual relationship between the hospital and the insurer." The court reasoned that because there was "no contract between [the Hospital] and Nationwide, the statute is simply inapplicable to [the Hospital's] separate request for payment from Nationwide." *Id.*

The collection efforts by Mercy and Avectus are the same as the Hospital's collection of payment from Nationwide in *Hayberg*. They seek to collect payment from the negligent third-parties responsible for Plaintiffs' medical costs, just like the Hospital sought to collect payment from the insurer for the negligent third-party responsible for Mrs. Hayberg's medical costs (Nationwide). Mercy and Avectus have no contractual relationship with the negligent third-parties, just as the Hospital in *Hayberg* had no contractual relationship with Nationwide. Thus, as in *Hayberg*, § 1751.60 is inapplicable, and Plaintiffs' claims are invalid.

> **D.** **The Sixth Circuit's holding in *Spectrum Health* does not save Plaintiffs' claims.**

Recognizing this clear and controlling case law from the Ohio courts, Plaintiffs have ventured to the federal court system in an attempt to save their case. Plaintiffs cite *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304 (6th Cir. 2005), for the faulty proposition that attempts to recover from third-party settlement/judgment funds is equivalent to attempting to recover directly from the

patient. (Response to Mercy Motion at 6 – 9.)  Plaintiffs' reliance on *Spectrum Health* is misplaced.

In *Spectrum Health*, the plaintiff was severely injured during surgery at a hospital and was admitted into a nursing home. 410 F.3d at 308. Prior to admission, the plaintiff (through her attorney and guardian ad litem) agreed to grant the nursing home a lien on the proceeds of any settlement or verdict resulting from the plaintiff's malpractice suit against the hospital. *Id.* Approximately five months after being granted the lien, the hospital applied for and accepted Medicaid payments for the plaintiff's care. *Id.* The plaintiff spent nearly four years at the nursing home, accumulating a total bill of $639,594.67. *Id.* The nursing home received $101,021.86 from Medicaid, leaving a shortfall of approximately $538,572.81. *Id.* The plaintiff's malpractice suit was eventually settled, and the nursing home received payment of its $538,572.81 shortfall pursuant to the lien. *Id.* at 308-09. The plaintiff later sought to recover the shortfall payment, arguing that because the nursing home accepted Medicaid payments, the federal Medicaid statutes (42 U.S.C. §§ 1396-1396v) prohibit the nursing home from recovering any further payments for those services. *Id.* at 313.

The Sixth Circuit analyzed the Medicaid statutes and explained that while the Medicaid program is voluntary, a health care provider who participates and accepts payment from Medicaid must accept that as payment-in-full, even if a third party is later found liable for the patient's medical expenses. *Id.* at 313-14. Thus, the court held that the nursing home's lien was invalid because the nursing home had accepted payments from Medicaid:

> [The nursing home] was not required to seek payment from Medicaid…Having chosen to accept payment from Medicaid however, [the nursing home] abandoned all rights to further recovery of its customary fee from the lien. As we have stated, Medicaid is a contract between a service provider and the government, in which the Medicaid recipient is a third-party beneficiary. By accepting the Medicaid payment, the service provider accepts the terms of the contract – specifically that the Medicaid amount is *payment in full*.

*Id.* at 315 (citations omitted; emphasis in original).

The Sixth Circuit's broad analysis of the Medicaid statute stands in stark contrast to the Ohio courts' limited application of § 1751.60. The federal Medicaid statutes prohibit a health care provider who has elected to recover from the health insurer (Medicaid) from recovering further payments from anyone – the patient, an automobile insurer, or any other responsible third party. In contrast, the Supreme Court of Ohio in *King* and the Ohio Court of Appeals in *Hayberg* ruled that under § 1751.60, health care providers are permitted to seek recovery from responsible third-parties, even after accepting payment from the health insurer. Given this key distinction in statutory interpretation, the Sixth Circuit's opinion in *Spectrum Health* regarding the proper interpretation of the federal Medicaid statutes has no effect on the proper interpretation of Ohio Rev. Code § 1751.60, which has already been established in *King* and *Hayberg*.

Plaintiffs ignore this key distinction and instead cite to a limited portion of the *Spectrum Health* opinion in which the Sixth Circuit rejected the argument that the nursing home's lien was not an attempt to recover from the plaintiff, but rather from a third-party tortfeasor. 410 F.3d at 317. This portion of the *Spectrum Health* decision is not applicable to this case. The nursing home in *Spectrum Health* obtained a negotiated

14

lien from the patient in exchange for accepting the patient into its care.  In contrast, Avectus did not seek or obtain a negotiated lien from Plaintiffs.  Instead, Avectus simply sent letters to Plaintiffs and their counsel seeking to identify and collect from the third-parties deemed responsible for Plaintiffs' medical costs.

Furthermore, *Spectrum Health* is a federal case, and to the extent it conflicts with the Supreme Court of Ohio's interpretation of § 1751.60, the Ohio authority is controlling.  *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) ("Because state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice.").  The fact of the matter is that the Supreme Court of Ohio, in an opinion six years **after** *Spectrum Health*, clearly held that § 1751.60 does not prevent a health care provider from collecting payments from responsible third-parties.

## V. CONCLUSION

Plaintiffs' Complaint fails to state a claim upon which relief can be granted as a matter of law and should be dismissed under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*/s/ Chad R. Ziepfel*
Chad R. Ziepfel (0084274)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Ph: (513) 357-9368
Fx: (513) 381-0205
cziepfel@taftlaw.com
*Attorney for Defendant*
*Avectus Healthcare Solutions, LLC*

15

## CERTIFICATE OF SERVICE

      I certify that on November 24, 2015, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

                                              */s/ Chad R. Ziepfel*
                                              Chad R. Ziepfel