**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Keith Raymond, *et al.*,

                Plaintiffs,                                       Case No.  1:15cv559

                v.                                        Judge Michael R. Barrett

Avectus Healthcare Solutions, LLC, *et al.*,

                Defendants.

**<u>OPINION & ORDER</u>**

      This matter is before the Court upon Defendant Mercy Health's Motion to Dismiss (Doc. 5) and Defendants Avectus Healthcare Solutions, LLC's Motion to Dismiss (Doc. 10).  These motions have been fully briefed.  (Docs. 7, 9, 12, 16).  In addition, Plaintiffs filed a Notice of Supplemental Authority (Doc. 19) and Defendant Avectus Healthcare Solutions, LLC filed a Response (Doc. 20).

**I.**      **<u>BACKGROUND</u>**

      On February 10, 2015, Plaintiff Keith Raymond was injured after slipping and falling on a wet floor.  (Doc. 1, ¶ 9).  Raymond was treated at Mercy Health Anderson Hospital.  (Id., ¶ 10).  On June 12, 2013, Plaintiff Timothy Strunk was injured in an automobile accident. (Id., ¶ 17).  Strunk was treated at Mercy Health Clermont Hospital. (Id., ¶ 18).  Defendant Mercy Health ("Mercy") is the owner and/or parent company of Mercy Health Anderson Hospital and Mercy Health Clermont Hospital.  (Id., ¶¶ 11, 19). During their admission to the hospitals, Plaintiffs informed Mercy that they had health insurance coverage through health insurance corporations.  (Id. ¶¶ 12, 20).

Defendant Avectus Healthcare Solutions, LLC ("Avectus") provides debt collection and third party recovery services on behalf of Mercy. (Id., ¶ 6). After Plaintiffs received their medical treatment, Avectus sent a letter to Plaintiffs' legal counsel requesting that legal counsel sign a letter of protection against any settlement or judgment. (Id., ¶¶ 16, 24). The letter of protection provided: "I agree to immediately notify Avectus Healthcare Solutions of any settlement, judgment, or dismissal of this claim and, further, agree to withhold and pay directly to Mercy Health Anderson Hospital the balance of any unpaid charges owed by the above individual on this claim should my firm obtain any settlement or judgment for this patient." (Id.) Defendants have failed and/or refused to submit the claims or medical expenses to Plaintiff's health insurance corporations. (Id. ¶¶ 15, 23). Plaintiffs claim that this attempt to collect tort proceeds from Plaintiffs is prohibited by Ohio Revised Code § 1751.60 (A).

Plaintiffs bring the following claims: (1) breach of contract, (2) breach of third-party beneficiary contract, (3) violation of the Ohio Consumer Sales Practices Act, (4) violation of the Fair Debt Collection Practices Act, (5) fraud, (6) conversion, (7) unjust enrichment, and (8) punitive damages.

Defendants argue that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants explain that their attempt to recover outstanding medical expenses from potentially responsible third-parties does not violate Ohio Revised Code § 1751.60.

## II.  ANALYSIS

### A.  Motion to Dismiss Standard

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  However, legal conclusions conveyed as factual allegations do not be accepted as true, rather the reviewing court is allowed to draw on its own judicial experience and common sense in determining whether or not the pleader can obtain any relief based on the purported facts.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009).

"[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement' . . .it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556).

### B.  Ohio Revised Code § 1751.60

The parties agree that Plaintiffs' claims hinge on whether Defendants violated

3

Ohio Revised Code § 1751.60(A), which provides, in relevant part:

> every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles.

Ohio Rev. Code § 1751.60(A).

In *King v. ProMedica Health Sys., Inc.*, the Supreme Court of Ohio addressed the applicability of Section 1751.60(A).  955 N.E.2d 348 (Ohio 2011).  The plaintiff in *King* was injured in an automobile accident and was treated for her injuries at the Toledo Hospital.  *Id.*  The plaintiff informed the hospital that she was covered by Aetna Health, Inc.  *Id.*  However, the defendants billed the plaintiff's automobile insurer, Safeco Insurance Company of Illinois, for the services rendered.  *Id.*  The plaintiff brought a class-action suit and claimed breach of contract, violation of public policy, violation of Ohio's Consumer Sales Practices Act, and conversion.  *Id.* at 349-350.  Each cause of action was based on the claim that the defendants violated Ohio Revised Code § 1751.60(A) by billing the automobile insurer instead of the plaintiffs' health-insuring corporation.  *Id.* at 350.

The trial court dismissed the claims for failing to state a claim.  *Id.*  On appeal, the court of appeals reversed, and held that health-care providers that execute preferred-provider agreements with health-insuring corporations can bill only the health-insuring corporation and cannot bill any other potential payors.  *Id.*  The Ohio Supreme Court then rejected this conclusion and explained:

> By its express terms, R.C. 1751.60(A) governs providers or health-care facilities, health-insuring corporations, and a health-insuring corporation's insured.  The statute is applicable only when there is a contract between a

> provider and a health-insuring corporation, and the provider seeks compensation for services rendered. The legislature expressed its intent that the provider must seek compensation solely from the health-insuring corporation and not from the insured.

*Id*. The court noted that the defendants never sought compensation from the plaintiff, and when they received payment, it was from Safeco. *Id*. at 350-351. Therefore, the court rejected the plaintiff's argument that her Safeco payments were an asset that belonged to her and that by seeking medical-benefit payments available under the automobile policy, appellants essentially sought compensation from her. *Id*. at 350.

The court also rejected the plaintiff's argument that the statutory language "shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers" means that providers that contract with a health-insuring corporation can collect payment from only the health-insuring corporation. *Id*. at 351. The court explained that Section 1751.60(A) addresses the contract between a provider and a health-insuring corporation. *Id*. Therefore, the Court concluded that this language "is limited to the situation in which a health-care services contract is in place between a provider and a health-insuring corporation." *Id*. Therefore, the court held that Section 1751.60(A) "applies only when a provider seeks payment from a health-insuring corporation's insured with which the provider has entered into a contract." *Id*.

The court then turned to the plaintiff's final argument that Section 1751.60(A) conflicts with Ohio's law regarding the coordination of insurance benefits. *Id*. The court explained that Section 1751.60(A) does not apply to coordination of benefits because Section 1751.60(A) only concerns a health care provider's ability to seek compensation from a health-insuring corporation's insured. *Id*.

The analysis from *King* was applied in *Hayberg v. Robinson Mem. Hosp. Found.*, 995 N.E.2d 888 (Ohio Ct. App. 2013). The plaintiff and her husband were involved in an automobile accident in which the plaintiff's husband was driving and found to be negligent. *Id.* at 889. The plaintiff's husband had automobile liability insurance through Nationwide Insurance Company ("Nationwide") and health insurance through Anthem Blue Cross Blue Shield ("Anthem") as part of the General Motors Corporation's self-funded health insurance plan ("GM Plan"). *Id.* The total hospital bill for the plaintiff's treatment was $13,861.45. *Id.* The plaintiff sought payment from Anthem in the amount of $11,295.39, which reflected a deduction for a "write off" according to the terms of the contract negotiated between the hospital and Anthem. *Id.* Anthem paid the bill. *Id.* However, thereafter, because the plaintiff's husband was negligent, the hospital billed Nationwide under the automobile policy for the entire amount owed for the hospital services. *Id.* Nationwide paid the hospital the full amount of the bill, which was $2,566.06 more than what Anthem had paid. *Id.* The hospital then reimbursed Anthem for the sum it had paid. *Id.* The plaintiff later sued her husband for negligence. *Id.* at 890. Nationwide settled the lawsuit for the policy limits of $100,000. *Id.* Nationwide then deducted amounts for the hospital bills it previously paid, which included the additional $2,566.06 "write off" amount. *Id.* The plaintiff sought to recover this amount from the hospital, arguing that the hospital's billing practices violated Section 1751.60(A). *Id.*

The plaintiff attempted to distinguish her claim from *King* by arguing that she was essentially required to pay compensation to the hospital. *Id.* at 893. The plaintiff explained that because her husband's automobile carrier was billed an extra $2,566.06,

6

she was deprived of that sum in her final settlement.  *Id.*  The court found this point irrelevant under the *King* analysis.  The court explained that "the *King* court emphasized that R.C. 1751.60(A) only refers to health-care providers and health insurers."  *Id.*  The court explained further:

> According to the Supreme Court, R.C. 1751.60(A) only applies when there is a contractual relationship between the hospital and the insurer.  Under the undisputed facts of this case, the only contractual relationship was between appellee and the GM plan.  Since no contract existed between appellee and Nationwide, the statute is simply inapplicable to appellee's separate request for payment from Nationwide.

*Id.*

Plaintiffs maintain that their claims can be distinguished from *King* and *Hayberg* because the Ohio Supreme Court was only addressing a situation where a healthcare provider seeks payment from an automobile insurer.  Plaintiffs explain that in their case, Defendants sought payment from Plaintiffs directly by sending a letter to Plaintiffs' counsel.

In support of this argument, Plaintiffs analogize their situation to that in *Spectrum Health v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304 (6th Cir. 2005).  In that case, the patient, Anna Marie Bowling, was admitted to a rehabilitation center and nursing home operated by Spectrum Health Continuing Care Center ("Spectrum") after suffering debilitating injuries during a surgery.  *Id.* at 308.  A medical malpractice suit was filed on her behalf.  *Id.*  As a condition of being admitted to Spectrum's center, representatives of Bowling were required to acknowledge a lien on the proceeds of a settlement or verdict in the malpractice lawsuit to cover Bowling's medical costs.  *Id.*  After the parties reached a settlement in the medical malpractice case, a trust was established for Bowling's benefit.  *Id.*  Spectrum was paid $575,000 from the trust,

7

which included the shortfall between Spectrum's customary cost of its services and the amount already paid by Medicaid. *Id.* at 309. The trustees objected to the payment of funds from the settlement proceeds. *Id.*

The issue presented to the Sixth Circuit was "whether a service provider, who has already accepted a Medicaid payment, may recover additional sums after a patient has received damages in a personal injury lawsuit." *Id.* at 314. The Sixth Circuit explained that the Medicare statute prohibited "balance billing," which prohibits service providers from recovering the balance between its customary fee and the Medicaid payment from patients. *Id.* The court explained that as a result, health care providers who elect to accept Medicaid payments must accept the state-approved Medicaid payments as payment in full and may not require that patients pay anything beyond that amount. *Id.* at 313-314.

Because the Medicaid statute is not at issue here, Plaintiffs focus on the Sixth Circuit's discussion of the position taken by the district court and the dissent that the enforcement of the lien was not prohibited by the balance billing provision in the Medicare statute because Spectrum was not seeking to recover from Bowling or the trust, but was instead seeking to recover from the third-party tortfeasor. *Id.* at 317. The Sixth Circuit explained:

> while the dissent is correct that the federal and state statutes only mention attempts to recover from the individual or his or her representative, Spectrum's lien on the settlement proceeds is seeking recovery from Bowling for her medical care, and therefore falls within this prohibition. Despite the line item allocation to Spectrum in the settlement agreement, Spectrum was not a party to the medical malpractice suit and the settlement allocation is not its property. Similarly, once the settlement has been approved, the settlement proceeds are no longer the property of the tortfeasor either. Instead, the entirety of the settlement, regardless of how it is allocated, belongs to Bowling; Spectrum's lien is merely an

8

encumbrance upon that property.

*Id.* at 317.

This Court is hesitant to adopt this rationale outside the context of the balance-billing provision in the Medicare statute.  As the Sixth Circuit explained in *Spectrum*, "the federal and state statutes outlining Medicaid's balance-billing prohibition cannot be read in isolation."  *Id.* at 318.  The court noted that both the federal and state regulations explicitly limit participation in the Medicaid program to providers who will accept the amounts paid by the agency or the state as payment in full.  *Id.* (citing 42 C.F.R. § 447.15 and Mich. Comp. Laws Ann. § 400.111b(14)).   The court explained:

> The clear import of these words is that the Medicaid payment is the total amount owed to the provider for the services rendered, and thus the provider "may not attempt to recover any additional amounts elsewhere." *Rehab. Ass'n of Va., Inc. v. Kozlowski*, 42 F.3d 1444, 1447 (4th Cir.1994), *cert. denied*, 516 U.S. 811, 116 S.Ct. 60, 133 L.Ed.2d 23 (1995); *see also Lizer*, 308 F.Supp.2d at 1009 ("This language prevents providers from billing any entity for the difference between their customary charge and the amount paid by Medicaid.").   There is nothing in the statutes or regulations which suggests that a service provider may recover additional payment for those services.

*Id.*  Moreover, as explained above, in addressing a similar argument in its analysis of the statute which is applicable here, the Ohio Supreme Court in *King* rejected this argument:

> It is undisputed that appellants never sought compensation from King.  But King argues that her Safeco medical-benefit payments are an asset that belongs to her and that by seeking medical-benefit payments available under the automobile policy, appellants essentially sought compensation from her. King's argument is unpersuasive.   Under R.C. 1751.01(G), "'[c]ompensation' means remuneration for the provision of health care services, determined on other than a fee-for-service or discounted-fee-for-service basis."   Compensation by Safeco did not equate to compensation by King: by making the payment, Safeco fulfilled its contractual obligation to King to cover her medical costs in the event of an accident.   When appellants received payment, they received it from Safeco.

*King*, 955 N.E.2d at 350-51.

There is no dispute that in this case Defendants did not seek compensation from Plaintiffs under the contract between Mercy and Plaintiffs' health insuring corporations. Because Section 1751.60(A) only applies to the contract between Mercy and those health insuring corporations, Section 1751.60(A) was not applicable in this instance. Therefore, Defendants did not violate the statute when they sent a letter to Plaintiffs' legal counsel requesting that legal counsel sign a letter of protection against any settlement or judgment.

**III.**    **CONCLUSION**

Accordingly, Defendant Mercy Health's Motion to Dismiss (Doc. 5) and Defendants Avectus Healthcare Solutions, LLC's Motion to Dismiss (Doc. 10) are **GRANTED**.  This matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
JUDGE MICHAEL R. BARRETT