**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Keith Raymond, *et al.,*

        Plaintiffs,

    v.                           Case No. 1:15cv559

Avectus Healthcare                    Judge Michael R. Barrett
Solutions, LLC, *et al.,*

        Defendants.

**<u>OPINION & ORDER</u>**

This matter is before the Court Plaintiffs' Motion for Class Certification.   (Doc. 92, 121).   Defendants Mercy Health and Avectus Healthcare Solutions, LLC. have filed Responses in Opposition (Docs. 104, 105, 112).   Plaintiffs filed a Reply.   (Docs. 112, 114, 116, 120).   Defendant Avectus was then granted leave to file a Sur-Reply.   (Doc. 126).

I.     **<u>BACKGROUND</u>**

Plaintiffs seek to certify the following class:

All health insured persons, with a health insurance plan accepted by Mercy Health, who:

1. Were patients at any Mercy Health operated facility in the State of Ohio between August 27, 2009 and the present, who;

2. Presented evidence of health insurance to Mercy Health, and;

3. Thereafter paid, or were requested to pay, any amount of money for the treatment received at any Mercy Health operated facility, other than for co-pays and deductibles, if any.

Plaintiff Keith Raymond was injured after slipping and falling on a wet floor at a casino. Plaintiff Timothy Strunk was injured in an automobile accident. Both Plaintiffs were treated for their injuries in hospital facilities operated by Defendant Mercy Health ("Mercy"). Upon admission, both Plaintiffs informed Mercy that they had health insurance. At the time, Mercy contracted with Defendant Avectus Healthcare Solutions, LLC to provide reimbursement assistance services for claims in which the patient's medical treatment was actually or potentially related to an accident or injury. (Doc. 104-1, David Hitzel Decl., ¶ 2). Avectus sent "letters of protection" to Plaintiffs' attorney on behalf of Mercy. The letters asked the attorney to agree "to immediately notify Avectus Healthcare Solutions of any settlement, judgment, or dismissal of this claim and, further, agree to withhold and pay directly to [Mercy] the balance of any unpaid charges owed by the above individual on this claim should my firm obtain any settlement or judgment for this patient." (Docs. 10-3, 10-4). The letter to Strunk's attorney explained "a letter of protection from you against any settlement or judgment will prevent any further collection efforts against your client on this account." (Doc. 10-3, PAGEID#125). The letter to Raymond's attorney explained "a letter of protection from you against any settlement or judgment will prevent your client's account form being sent to collections." (Doc. 10-4, PAGEID# 126).[1] Plaintiffs claim that because they had health insurance, this attempt to collect money for their medical expenses was improper.

Plaintiffs have brought the following claims: (1) breach of contract, (2) breach of third-party beneficiary contract, (3) violation of the Ohio Consumer Sales Practices Act ("OCSPA"), (4) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et*

---

[1]Plaintiffs repeatedly refer to the letters of protection sent to their attorney as being "identical" but the wording is slightly different regarding the accounts being sent to collections.

*seq.* ("FDCPA"), (5) fraud, (6) conversion, (7) unjust enrichment, and (8) punitive damages. The parties appear to agree that these claims hinge on whether or not Defendants have violated Ohio Revised Code § 1751.60(A), which provides:

> every provider or health care facility that contracts with a health insuring corporation to provide health care services to the health insuring corporation's enrollees or subscribers shall seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles.

Ohio Rev. Code § 1751.60(A). Plaintiffs maintain that the Sixth Circuit Court of Appeals has already found that Defendants violated § 1751.60. Defendants disagree.

Plaintiffs appealed this case to the Sixth Circuit after this Court granted Defendants' Motions to Dismiss. This Court had concluded that Ohio Revised Code § 1751.60 did not apply to Mercy and Avectus because neither defendant sought compensation from Plaintiffs while under a contract with Plaintiffs' health insuring corporation. The Sixth Circuit reversed, and explained:

> Raymond and Strunk allege that they are insured and that the healthcare provider, Mercy Health, has a contract for services with their respective health-insurance providers. Raymond and Strunk further allege that Mercy Health, through Avectus, by requesting that Raymond's and Strunk's attorneys "withhold and pay directly to Mercy Health [ ] the balance of any unpaid charges owed" by Raymond and Strunk, "collect[ed] and attempt[ed] to collect monies directly from patients" for healthcare services. Mercy Health and Avectus thus sought payment "from a health-insuring corporation's insured" while in a healthcare services contract with Raymond's and Strunk's health-insurance providers. *See King*, 955 N.E.2d at 351. Therefore, not only does § 1751.60 apply, but according to the allegations in the complaint, Mercy Health and Avectus's conduct violated the statute.

*Raymond v. Avectus Healthcare Sols., LLC*, 859 F.3d 381, 384 (6th Cir. 2017). Defendants maintain that this ruling does not amount to a finding that Defendants violated the statute because it was based upon the allegations in the complaint.

Defendants explain that Mercy submitted Strunk's medical bill to CareSource, an Ohio Medicaid managed health care plan. (Hitzel Decl., ¶ 8). CareSource paid Strunk's medical bill, but later demanded a refund after learning that Strunk had been involved in a car accident, which meant that a third-party liability insurer was required to pay the bill. (Id., ¶ 11). Mercy refunded the payments to CareSource. (Id., ¶ 12). As part of a global settlement with the third-party liability insurer, Avectus negotiated with Strunk's attorney for payment to be made to Mercy pursuant to the terms of a release signed by Strunk and his wife ("Release"). (Id., ¶¶ 13–14 Ex. 3).

Avectus contacted the insurance carrier for the casino where Raymond fell, but after the insurance carrier denied coverage, Avectus returned the claim to Mercy, who billed Raymond's health insurance provider. (Id., ¶¶ 17-19). Raymond's health insurance provider paid the bill, but Raymond did not pay the copayment. (Id., ¶ 20).

Defendants argue that these facts show that in order to find a violation of Ohio Revised Code § 1751.60, there will need to be an individualized assessment of each class member's claim and class certification is not warranted.

## II. ANALYSIS

### A. Class Certification standards

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 -701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" *Id.* at 348-49, 131

S.Ct. 2541 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 564 U.S. at 350, 131 S.Ct. 2541 (emphasis in original). Therefore, this Court must "conduct a 'rigorous analysis' into whether the prerequisites of Rule 23 are met before certifying a class." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996) (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). This analysis "will entail some overlap with the merits of [ ] plaintiff's underlying claim. That cannot be helped. '[The] class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Wal-Mart Stores*, 564 U.S. at 351 (quoting *Falcon*, 457 U.S. at 160). Therefore, it is appropriate for the Court to look not only to the pleadings, but also to additional exhibits and information submitted by the parties in deciding the motion for certification. *Falcon*, 457 U.S. at 160. The party seeking class certification bears the burden of proof. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

"To merit certification, a putative class must satisfy the four requirements of Rule 23(a): (1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical ... of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Macy v.*

5

*GC Servs. Ltd. P'ship*, 897 F.3d 747, 761–62 (6th Cir. 2018) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (alterations in original). A putative class must also fit within one of the three types of classes listed in Rule 23(b). *Id.* Here, Plaintiffs move for class certification pursuant to Rule 23(b)(2) and 23(b)(3).

Rule 23(b)(2) authorizes "mandatory" class actions under which potential class members do not have an automatic right to notice or a right to opt out of the class. *Reeb v. Ohio Dep't of Rehab. & Correction*, 435 F.3d 639, 645 (6th Cir. 2006). The Rule authorizes a class action where: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Under Rule 23(b)(3), a court may certify a class only if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## B. Rule 23(a) requirements

### 1. Numerosity

"The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

Plaintiffs maintain that they have satisfied the numerosity requirement based upon 19,000 letters Avectus provided to Plaintiffs as part of discovery in this case. However,

this number is somewhat meaningless. There is testimony that Avectus collected 9,000 letters of protection in response to Plaintiffs' discovery request. (Doc. 54, Austin Gray Dep., PAGIED# 737). These letters of protection were presumably sent on behalf of Mercy, but the testimony in the record is not clear. In its arguments regarding numerosity, Plaintiffs also refer to 10,000 letters Avectus initially sent to patients. However, as the Sixth Circuit recognized, Plaintiffs' claims are not based on these initial patient letters. *Raymond*, 859 F.3d at 382 n.2 ("reference to [initial patient] letters is absent from the complaint, and [Plaintiffs] do not rely on them for any of their claims."). Plaintiffs also cite the $42 million which Avectus has collected on behalf of Mercy over the life of the contract between Avectus and Mercy. (Gray Dep., PAGEID# 731). However, it appears from information supplied by Mercy, that only $606,148.46 of that amount is comprised of payments Mercy received from patients to whom Avectus sent a letter of protection. (Doc. 112-1, Chad Ziepfel Decl., ¶ 3). Mercy has also filed nine spreadsheets in the record showing account information for patients to whom Avectus sent a letter of protection. (Doc. 112-1, PAGEID# 3372-3373). From these spreadsheets, Plaintiffs have created a sample of fifty-three patients who (1) Avectus sent a letter or protection; and (2) the patient made a payment to Mercy. (Doc. 120-11, PAGEID# 3592-3593). This sample of fifty-three patients is shown in Exhibit 11 to Plaintiffs' Reply to Mercy's Response.

"There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1079 (citing *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976)). Courts routinely hold that "a class of 40 or more members is sufficient to meet the

7

numerosity requirement." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014). However, Rule 23(a)(1) also requires that joinder be "impracticable," *Ganci v. MBF Inspection Servs., Inc.*, 323 F.R.D. 249, 255 (S.D. Ohio 2017). "Practicability of joinder is informed by 'ease of identifying members and determining addresses, ease of service on members if joined, and geographical dispersion among other things.'" *Id.* (quoting *Turnage v. Norfolk S. Corp.*, 307 Fed.Appx. 918, 921 (6th Cir. 2009)). Plaintiffs have provided little information to demonstrate that the proposed class members are "so numerous that joinder of all members [would be] impracticable." Fed.R.Civ.P. 23(a)(1). However, giving Plaintiffs the benefit of the doubt in this instance, the Court finds that Plaintiffs have satisfied the numerosity requirement based upon the fifty-three patients shown in Exhibit 11 to Plaintiffs' Reply to Mercy's Response.

### 2. Commonality

Commonality exists when class members' claims depend upon a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. However, to satisfy the commonality requirement at the class-certification stage, the plaintiff is not required to demonstrate that all or most class members were in fact injured. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).

To the extent that Plaintiffs' claims are based on a common contention that by sending letters of protection, Avectus violated Ohio Revised Code § 1751.60, the Court finds that Plaintiffs have satisfied the commonality requirement.

### 3. **Typicality**

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (citing 1 Newberg on Class Actions § 3-13, at 3-76). "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998). Often, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart Stores*, 131 S.Ct. at 2551 n. 5.

In general terms, Plaintiffs' claims are that Defendants violated Ohio Revised Code § 1751.60, and based on the violation of this statute, Defendants are liable on Plaintiffs' contract, OCSPA, FDCPA, fraud, conversion and unjust enrichment claims. To the extent that letters of protection were sent to attorneys representing other class members, the claims of those class members are "fairly encompassed" by Plaintiffs' claims.

Defendants argue that Plaintiffs' claims are not typical in that Mercy and Avectus did not collect any payment from Raymond, and the services Strunk received were lawfully paid under the terms of the Release. However, as the Sixth Circuit has explained, in order to conclude that the typicality requirement is satisfied, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir. 1976)); *Mann v. Acclaim Fin. Servs., Inc.*, 232 F.R.D. 278, 284–85 (S.D. Ohio 2003) ("While the extent of a class member's particular injuries may differ, because they all received

9

communications containing the same language, the type of injury will generally be the same.") (citing *Carroll v. United Compucred Collections, Inc.*, 2002 WL 31936511 (M.D.Tenn. Nov.15, 2002). Therefore, Plaintiffs have satisfied typicality under Rule 23(a)(3).

### 4. **Adequacy of representation**

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining the adequacy of representation: (1) "[t]he representative must have common interests with unnamed members of the class;" and (2) "it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525. "Thus, 'the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.'" *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012)).

To the extent that Plaintiffs allege they received letters of protection in violation of Ohio Revised Code § 1751.60 which resulted in a violation of a contractual duty; violated the FDCPA, OCSPA; or constituted fraud, conversion or unjust enrichment; Plaintiffs have common interests with those in the class on the claims asserted in this case.[2]

---

[2]To be clear, in order to be successful on the merits of their claims, Plaintiffs must establish both a violation of Section 1751.60 and the elements of each of their claims under the FDCPA, OCSPA; and their claims for fraud, conversion and unjust enrichment. For instance, Defendants point out that the FDCPA only applies to a "debt collector;" and the definition of "debt collector" excludes a person who is attempting to collect a debt that was not in default at the time it was acquired by the person. *Accord Garner v. Select Portfolio Servicing, Inc.*, No. 17-1303, 2017 WL 8294293, at *3 (6th Cir. Oct. 27, 2017) (citing 15 U.S.C. § 1692a(6)(F). Defendants maintain that the patient accounts were not in default when Mercy sent them to

With regard to the second criteria, the record shows that Plaintiffs will vigorously prosecute the interests of the class through qualified counsel.   While Avectus argues that Plaintiffs have not followed the litigation and it is their counsel which is the driving force behind class certification, Raymond testified in his deposition that he reviewed the Complaint and the Sixth Circuit's decision in this matter.   (Doc. 75, Keith Raymond Dep., PAGEID#1723-24).   Raymond also testified that he has met in person with his attorneys on at least six occasions, and he speaks to his attorneys at least once a month.   (Id., PAGEID# 1726).   Raymond explained that he followed the case closely because he was concerned.   (Id.)   Raymond stated: "besides me, I think we all been unjustified, you know, I filed the suit because they didn't do me right."   (Id.)   Strunk testified that he had brought a class action because: "I, along with many other people, had provided insurance and we were turn around charged when we shouldn't have been.   And we're here to try to stop that and to get the money returned to the people that it's supposed to be with." (Doc. 77, Timothy Strunk Dep., PAGEID # 2227-2228).   While Plaintiffs may not know every detail of the case, this testimony demonstrates that they are adequate class representatives.   *Accord City Select Auto Sales, Inc. v. David Randall Assocs., Inc.*, 296 F.R.D. 299, 316 (D.N.J. 2013) (finding that plaintiff was adequate class representative in Telephone Consumer Protection Act class action even though plaintiff did not remember the specific fax at issue and had a minimal degree of knowledge about the case).

Defendants raise a concern regarding the adequacy of class counsel because counsel are necessary fact witnesses in this case.   As one district court has explained, counsel cannot fairly and adequately represent the interest of the proposed class:

"Where there is a substantial possibility that the class counsel will be called

---

Avectus.

as a witness to the transaction in which he or she represented the named plaintiffs, and might therefore be disqualified from serving as counsel, the named plaintiffs are not adequate representatives of the class." *John Bordeau, et al.*, 32B Am. Jur. 2d Federal Courts § 1669 (2017) (citing *Shroder v. Suburban Coastal Corp.*, 729 F.2d 1371 (11th Cir. 1984)). "The test is whether the attorney is an obvious and objectively necessary witness, and if so, he or she is not an appropriate choice for class counsel and cannot give adequate representation." *Id.* (citing *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 119 F.R.D. 344 (S.D.N.Y. 1988), judgment aff'd, 903 F.2d 176 (2d Cir. 1990)). "Counsel could not continue to serve if the testimony would concern either the material facts of the case or facts that could not be elicited from other witnesses." *Id.* (citing *Clark v. Cameron-Brown Co.*, 72 F.R.D. 48 (M.D.N.C. 1976)).

*Poynter v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-773-DJH-CHL, 2017 WL 2779489, at *12 (W.D. Ky. June 27, 2017). Defendants argue counsel cannot serve as class counsel because Plaintiffs' counsel Gary Franke received the letter of protection on behalf of both Plaintiffs. Defendants also explain that Plaintiffs' counsel negotiated the release and subsequent payment to Mercy on behalf of Strunk.

The Court finds that Plaintiffs' counsel are not necessary witnesses on these issues. There is no dispute that Gary Franke received the letters of protection. While there may be a dispute regarding the legal significance of the release signed by Strunk, there is no factual dispute regarding the signing of the release.

However, as this Court has recognized, "an individual may not be an adequate representative if she is subject to unique defenses that place her in a position that is antagonistic to the interests of the class." Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 484 (S.D. Ohio 2004) (citing *Levels v. AKZO Nobel Salt, Inc.*, 178 F.R.D. 171, 179 (N.D.Ohio 1998)). A unique defense can "bring into question the adequacy of the named plaintiff's representation because such a defense can distract the named plaintiff to such an extent that its representation of the interests of the rest of the class will suffer." *Beach*

12

*v. Healthways, Inc.*, No. 3:08cv569, 2009 WL 3245393, at \*4 (M.D. Tenn. Oct. 5, 2009) (citing *O'Neil v. Appel*, 165 F.R.D. 479, 492 (W.D.Mich. 1996)).   At the class certification stage, a defendant need not show that such defenses will ultimately be successful, but "a defendant must show some degree of likelihood a unique defense will play a significant role at trial.   If a court determines an asserted unique defense has no merit, the defense will not preclude class certification."   *Norfolk Cty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 332 F.R.D. 556, 568 (M.D. Tenn. 2019) (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006)).

Defendants maintain that Strunk does not have common interests with the unnamed members of the class because Strunk's health insurance was through CareSource.   As one Ohio court explained:

> CareSource is a managed care payer that administers Medicaid payments and services for certain Ohio Medicaid beneficiaries under a contract with the Ohio Department of Job and Family Services (ODJFS). ODJFS pays CareSource a set amount per beneficiary, and CareSource in turn contracts with health-care providers . . . for the health care services. The plan and provider establish the terms of service and payment in a contract between them.

*Kettering Health Network v. CareSource*, 2017 WL 1193798, \*1 (Ohio Ct. App. March 31, 2017).

The definitions which accompany Section 1751.60, explain that "Health insuring corporation" means:

> a corporation, as defined in division (H) of this section, that, pursuant to a policy, contract, certificate, or agreement, pays for, reimburses, or provides, delivers, arranges for, or otherwise makes available, basic health care services, supplemental health care services, or specialty health care services, or a combination of basic health care services and either supplemental health care services or specialty health care services, through either an open panel plan or a closed panel plan.

Ohio Rev. Code § 1751.01(O). Division (H) defines "corporation" as "a corporation formed under Chapter 1701. or 1702. of the Revised Code or the similar laws of another state." Ohio Rev. Code § 1751.01(H). While there are a number of exceptions to this definition,[3] none of the exceptions make it clear Section 1751.60 does not apply to Medicaid patients.

Defendants also argue that because Strunk signed the Release assuming the obligation to pay for the services, the voluntary-payment doctrine bars his claim. Ohio's voluntary payment doctrine has been described by this Court as follows: "In the absence of fraud, duress, compulsion, or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 225 F. Supp. 3d 670, 678–79 (S.D. Ohio 2016) (quoting *Scott v. Fairbanks Capital Corp.*, 284 F.Supp.2d 880, 894 (S.D. Ohio 2003)).

---

[3]The definitions section for Section 1751.60 explains:

"Health insuring corporation" does not include a limited liability company formed pursuant to Chapter 1705. of the Revised Code, an insurer licensed under Title XXXIX of the Revised Code if that insurer offers only open panel plans under which all providers and health care facilities participating receive their compensation directly from the insurer, a corporation formed by or on behalf of a political subdivision or a department, office, or institution of the state, or a public entity formed by or on behalf of a board of county commissioners, a county board of developmental disabilities, an alcohol and drug addiction services board, a board of alcohol, drug addiction, and mental health services, or a community mental health board, as those terms are used in Chapters 340. and 5126. of the Revised Code. Except as provided by division (D) of section 1751.02 of the Revised Code, or as otherwise provided by law, no board, commission, agency, or other entity under the control of a political subdivision may accept insurance risk in providing for health care services. However, nothing in this division shall be construed as prohibiting such entities from purchasing the services of a health insuring corporation or a third-party administrator licensed under Chapter 3959. of the Revised Code.

Ohio Rev. Code § 1751.01(O).

14

However, this Court has found that Ohio's voluntary payment doctrine "appears to contradict the plain language of the FDCPA and, thus, it is questionable, at best, whether it is applicable to a federal claim under that statute."  *Scott*, 284 F. Supp. 2d at 895.

Therefore, at the class certification stage, Defendants have not shown that these defenses will likely play a significant role at trial.  Accordingly, the Court finds that Plaintiffs have satisfied the adequacy of representation requirement.

### C. <u>Rule 23(b)(3) requirements</u>

Rule 23(b)(3) requires a plaintiff to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members." "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012) (quoting *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011)).   This is a "far more demanding" showing than that required for commonality.  *AmChem Prods.*, 521 U.S. at 624.

Defendants argue that in order to find a violation of Ohio Revised Code § 1751.60, there will need to be individualized proof of the following: (1) whether a class member had insurance; (2) if so, whether that insurer had an agreement with Mercy; (3) whether any amount sought exceeded the member's co-pay or deductible; (4) whether any payment was made; and (5) if so, who made that payment.

Of these issues, Defendants seem focused on the issue as to whether a class member made a payment.  Evidence of a payment by an enrollee or subscriber is not

necessary to establish a violation of Section 1751.60,[4] so presumably Defendants raise the issue of payment as it relates to damages.  Damages are an element of a stand-alone Section 1751.60 claim.  *Carter v. Children's Emergency Services Inc.*, 2020 WL 748201, *4 (Ohio Ct. App. Feb. 14, 2020) ("Assuming that the defendants did violate [Section 1751.60], the plaintiffs could prevail only if they showed that they suffered compensable harm.").  However, statutory damages are available under the FDCPA. *See*, *e.g.*, *Mann v. Acclaim Fin. Servs., Inc.*, 348 F. Supp. 2d 923, 926 (S.D. Ohio 2004). In other words, if a violation of Section 1751.60 constitutes a violation of the FDCPA, class members would not necessarily need to prove actual damages.

As to the remaining issues, it appears that many of these issues regarding liability could be resolved by sorting the information in the spreadsheets produced by Mercy which contain account information for patients to whom Avectus sent a letter of protection. (See Doc. 112-1, PAGEID# 3372-3382).  These spreadsheets show the patient's name, the total charges, primary and secondary insurance information, payments made and whether the payments were co-pays or deductibles.  (Id.)  While each patient listed may not be able to establish a violation of Ohio Revised Code § 1751.60, "[i]f the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question."  *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 468 (6th Cir. 2017) (quoting *Sandusky Wellness Ctr., LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)).  In addition, the Sixth Circuit has "recognized repeatedly that 'the fact that a defense may arise and may affect different class members

---

[4]Section 1751.60 requires that providers or health care facilities "seek compensation for covered services solely from the health insuring corporation and not, under any circumstances, from the enrollees or subscribers, except for approved copayments and deductibles."

16

differently does not compel a finding that individual issues predominate over common ones.'" *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016) (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012)).  "It may be that the best remedy to both the purportedly atypical claims and defenses would be to create sub-classes."  *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 884 (6th Cir. 1997).  However, Rule 23 does not require such an action at this stage.  *Id.*

Therefore, these questions are not sufficient to keep common questions from predominating and preclude certification under Rule 23(b)(3).  Therefore, Plaintiffs have met the requirement of predominance of common issues under Rule 23(b)(3).  Plaintiffs' Motion for Class Certification is GRANTED to the extent that Plaintiffs seek certification under Rule 23(b)(3).

### D. Rule 23(b)(2) requirements

Under Rule 23(b)(2), plaintiffs must prove that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Defendants explain that Mercy terminated its relationship with Avectus in 2016,[5] and therefore, any request for injunctive relief is moot.

A claim seeking injunctive relief does not necessarily become moot when a defendant voluntarily ceases the objectionable conduct.  *United States v. W. T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the

---

[5]There is evidence in the record that on September 3, 2016, Mercy terminated its contract with Avectus. (Hitzel Decl., ¶ 5).

17

case, i.e., does not make the case moot."). However, a case may nevertheless be moot if the defendant can show that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 633. Here, it is undisputed that the contract between Mercy and Avectus was terminated. Therefore, any injunctive relief, if granted, would not make a difference to the legal interests of the parties and the request is moot. *See McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (citing *Crane v. Indiana High Sch. Athletic Ass'n*, 975 F.2d 1315, 1318 (7th Cir. 1992).

Moreover, as a general matter, injunctive relief is not authorized in FDCPA cases. *Mann v. Acclaim Fin. Servs., Inc.*, 232 F.R.D. 278, 285–86 (S.D. Ohio 2003).

Accordingly, Plaintiffs' Motion for Class Certification is DENIED to the extent that Plaintiff seek certification under Rule 23(b)(2).

### E. OCSPA

Plaintiffs' claim under Ohio's Consumer Sales Practices Act ("OCSPA") requires a separate discussion. To pursue a class action under this statute requires that a plaintiff "prove two elements: notice and injury." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680 (6th Cir. 2017). As this Court has explained:

> A consumer may qualify for class-action certification under the OCSPA only if the defendant's alleged violation is substantially similar to an act or practice previously declared to be deceptive or unconscionable. *Marrone v. Philip Morris U.S.A., Inc.*, 110 Ohio St.3d 5, 8, 850 N.E.2d 31 (2006) (citing O.R.C. § 1345.09(B). The prior notice may be in the form of (1) a rule adopted by the Attorney General under O.R.C. § 1345.09(B), or (2) an Ohio court decision published by the Attorney General). *Id.* Importantly, the Ohio Supreme Court has held, "Cases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA." *Id.* at 9, 850 N.E.2d 31.

*Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 648 (N.D. Ohio 2012).

Plaintiffs have not cited to a rule adopted by the Attorney General or cases which would establish prior notice.   Therefore, dismissal of the claim as a class action is proper and Plaintiffs may proceed in their individual capacity. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 869 (S.D. Ohio 2012).   Accordingly, Plaintiffs' Motion for Class Certification is DENIED to the extent that Plaintiffs seek class certification of their claim for a violation of the OCSPA.

III.     **CONCLUSION**

Based on the foregoing, Plaintiffs' Motion for Class Certification (Doc. 92, 121) is **GRANTED in PART** and **DENIED in PART**.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court